1          IN THE UNITED STATES DISTRICT COURT

2          FOR THE WESTERN DISTRICT OF PENNSYLVANIA

3                      ERIE DIVISION

4                        - - -

5   United States of America      :

6        -VS-                     : Criminal NO.:  05-CR-00012

7   SHAUN LANAIL BENNAFIELD       :

8                        - - -

9       Sentencing of **SHAUN LANAIL BENNAFIELD,** taken before

10  Judge Maurice Cohill, on Monday, March 13, 2006, at the

11  United States Federal Courthouse, Courtroom "B", 17 South

12  Park Row, Erie, Pennsylvania, 16501, commencing at 10:05 a.m.

13  and concluding at 10:30 a.m.

14                       - - -

15  APPEARANCES:

16  For the United States:
    Marshall Piccinini, Esquire

17

18  For the Defendant, Shaun Bennafield:
    Thomas Patton, Esquire

19

20              REPORTED BY:  DENICE A. GRILL, RMR
                FERGUSON & HOLDNACK REPORTING, INC.

21

22

23

24

25

1                        P R O C E E D I N G S

2

3           THE COURT:  Good morning.  Be seated.  This is

4      the time set for the sentencing of Shaun Lanail

5      Bennafield.  Mr. Patton, have you and your client

6      received and reviewed the presentence report?

7           MR. PATTON:  We have, your Honor.

8           THE COURT:  And you've gone over that with Mr.

9      Bennafield, I take it?

10          MR. PATTON:  Yes, sir.

11          THE COURT:  I've read your position statement

12     with respect to the sentencing, and also the response

13     of the Government to that statement.  There were no

14     objections filed by either party in the case, so it

15     won't be necessary to address any sorts of

16     objections.

17          We're operating with having to look at both

18     Sentencing Guidelines and the instructions that came

19     from the Supreme Court of United States in the case

20     known as Booker, in which they told us we have to

21     look at the guidelines.  But they are advisory only,

22     they're not mandatory on the Courts.

23          After having done that, in the absence of any

24     objections, with respect to the findings of the

25     probation officer and with respect to the guidelines,

1     we find that the appropriate offense level here is

2     29, and the criminal history category is Roman

3     Numeral V.  Thus, the applicable guideline range is

4     140 to 175 months' of imprisonment; Supervised

5     Release of five years; a fine in the range of $15,000

6     to $4,000,000; and a special assessment of $100.

7     At this time, Mr. Patton, do you wish to say

8     anything or introduce any initial testimony on behalf

9     of your client.

10    MR. PATTON:  Your Honor, we do not have any

11    testimony to present, your Honor, but I would like to

12    speak a little bit with the Court about the position

13    with respect to sentencing that's been filed, and the

14    Government's response to that.

15    As your Honor knows from having read our

16    position, our argument is that while Mr. Bennafield

17    certainly deserves a significant sentence in this

18    case due to the seriousness of the offense and the

19    existence of his criminal history, that when you look

20    at the factors set forth in 18 United States Code

21    Section 3553, that a sentence that is sufficient but

22    not greater than necessary to punish Mr. Bennafield

23    is the ten year mandatory minimum that applies to

24    this case.

25    I wanted to specifically address one of the

1  arguments raised in the Government's response to our

2  position, and that being that it would be

3  inappropriate for your Honor to give Mr. Bennafield a

4  sentence of ten years because that ten year mandatory

5  minimum would apply to a first time offender who had

6  no criminal history who was before this Court.  And

7  therefore, the Government argues that it makes no

8  sense to give Mr. Bennafield the same sentence that

9  someone who is a first time offender who was

10  convicted of possession with intent to distribute 50

11  or more grams of crack cocaine.  The fact of that

12  argument is it's incorrect.

13      If a person was standing before you as a first

14  time offender, and under the same facts as Mr.

15  Bennafield's case, that person would get the benefit

16  of what's commonly referred to as a safety valve,

17  which is designed to allow first time offenders not

18  to have to suffer the consequences of the severe

19  mandatory minimum penalty.  And not only that, under

20  the Sentencing Guidelines, specifically section

21  21.1(b)(7), if a defendant qualifies for the safety

22  valve provision, they also receive a two level

23  reduction in their offense level under the

24  guidelines.

25      So that a first time offender who would be

1    before your Honor basically in the same situation as

2    Mr. Bennafield as far as amounts of crack cocaine,

3    but different in the sense that he did not have any

4    criminal history, that person would actually be

5    looking at a sentence range of 70 to 87 months,

6    because they would have had an offense level of 27

7    rather than 29 as Mr. Bennafield has.  And an offense

8    level of 27 would give a sentencing range of 70 to 87

9    months.

10         And so if the Court were to give Mr.

11    Bennafield a sentence of 120 months, which is the

12    mandatory minimum, it would not somehow be placing

13    him in the same situation as a first time offender

14    who was before your Honor.

15         Now, Judge, I can't dispute the fact that Mr.

16    Bennafield has several prior adult convictions.  But

17    the flip side of that is nobody can dispute that the

18    longest period of incarceration the man ever served

19    is nine months.  And when you are trying to determine

20    what is an appropriate punishment for this person,

21    given this person's history, I believe it completely

22    is appropriate for you to look at, okay, how much

23    time has this person served in prison before, what

24    kind of sentences has he been subjected to before

25    that were not successful in convincing him not to

1       continue to commit crimes.

2           I think the second circuit explained the point

3       in the Mishoe case, M-I-S-H-O-E, that I cite in our

4       position, and you know it better than I can

5       articulate it.  And I think when you look at those

6       factors, you can decide that a ten year sentence is

7       appropriate in this case.  In asking you to look at

8       the length of prior sentences that Mr. Bennafield has

9       served, it does not equate with asking the Court to

10      ignore every other fact that's involved in the case.

11      Section 3553 tells you that you need to impose a

12      sentence that reflects the seriousness of the offense

13      to promote respect for the law, and to provide just

14      punishment for the offense.

15          Your Honor, a ten year imprisonment is an

16      exceedingly long sentence.  And to the extent that

17      anyone outside this courtroom would actually hear

18      about this sentencing, no one could legitimately look

19      at the facts of the case and say, man, Mr.

20      Bennafield, you know, he just got off with another

21      slap on the wrist, ten years in prison, he got off

22      easy.

23          I mean to the extent that anybody outside this

24      courtroom is going to hear about this case, they're

25      going to hear that the young man was arrested with

1    more than 50 grams of crack cocaine, and he's going

2    to prison for ten years.  Now I would submit that is

3    going to promote respect for the law, and show that

4    this is a very serious offense that the federal

5    criminal justice system takes seriously.          Now,

6    also with respect to the affording adequate

7    deterrence to criminal conduct, to the extent there

8    is such a thing as general deterrence, a ten year

9    sentence -- If a ten year sentence of imprisonment

10   for coming here and selling crack cocaine isn't

11   enough to deter someone other than Mr. Bennafield who

12   would somehow hear about this case, you know, a

13   sentence of 140 months isn't going to tip the balance

14   or the sentence of 175 months and going to make that

15   different to protect the public from further crimes

16   of the defendant, but Mr. Bennafield instead of the

17   defendant.

18          Certainly, incapacitation is going to prevent

19   Mr. Bennafield from committing offenses against

20   society.  And that's going to be true whether there's

21   a 120 month sentence or a 140 month sentence or 175

22   month sentence.

23          Finally, to provide the defendant with needed

24   educational or vocational training, medical care or

25   other correctional treatment in the most effective

1     manner, Mr. Bennafield I think certainly could

2     benefit from a program designed to address

3     controlled substance problems that he, himself, has.

4     And so that is available in the Bureau of Prisons.

5     Although it doesn't take ten years or 12 years to

6     achieve or complete that program.  And short of that,

7     there really aren't a really large amount of programs

8     unfortunately that the Bureau of Prisons does offer

9     to someone in Mr. Bennafield's position.

10          So while I can appreciate the Government's

11     position that Mr. Bennafield has numerous prior

12     convictions, and I appreciate the Government's

13     position that maybe he's gotten breaks in the past,

14     and now is the time -- no more breaks, he has to

15     receive a significant sentence, well ten years is a

16     significant sentence.

17          And I think this case illustrates that

18     sometimes be it State Court Judges and maybe even

19     sometimes Federal Court Judges, oftentimes don't do

20     young men much of a service by repeatedly imposing

21     sentences of probation or very low terms of

22     incarceration or probation, and you violate, and you

23     get more probation.  Because human beings, they learn

24     from experience.  We see it all the time.  You see it

25     in high profile college athletes who have no

1    appreciation for their own conduct, never expect to

2    be held accountable for what they do, because their

3    whole life the rules have been waived for them

4    because they're good at a sport.

5        So what do they learn?  Well, the rules don't

6    apply to me, so I can continue to act in this manner

7    and there's never going to be any consequences.

8    Well, consistently giving young men low sentences and

9    break after break, while may make them happy in the

10   short term, is a failing of our criminal justice

11   system in the sense that there needs to be graduated

12   penalties.  Because otherwise, you end up with

13   someone like Mr. Bennafield, who is now going from

14   probation, a couple days in jail, nine months, to 12

15   years.  And so I just ask you to consider that when

16   you're deciding, is it going to be 120 months, 140 or

17   170 months.

18       Is it -- Look, no matter which one of those

19   sentences you give to Mr. Bennafield, it's going to

20   be a huge increase over any other punishment the man

21   has ever received.

22       So, it's going to be categorically different

23   than any punishment he's ever received, that large of

24   an increase in the sentences he has received is going

25   to be.  I would submit, suffice to say, you know,

1    there are no more breaks.  I don't think I can say

2    getting a sentence of ten years really qualifies as

3    getting a break, and that, you know, if you come back

4    again, now you've done ten years, so the next

5    sentence is going to be significantly longer than ten

6    years.  And if you do that again, it will be

7    significantly longer than the 15 to 20 years he might

8    get the next time.

9         So I ask you to consider all that and not

10    close your eyes to Mr. Bennafield's criminal history,

11    but consider it, and ask you that you give a sentence

12    of 120 months.

13         THE COURT:  Thanks, Mr. Patton.  Mr.

14    Bennafield, anything you wanted to say on your

15    behalf?

16         THE DEFENDANT:  Yes, your Honor.  I'd like to

17    just say that I understand the crimes I committed,

18    and I apologize to the Court.  I'm willing to accept

19    whatever sentence that you impose.  Thank you.

20         THE COURT:  Thank you.  Mr. Piccinini.

21         MR. PICCININI:  Thank you, your Honor.  Your

22    Honor, at the outset counsel -- Or the defendant's

23    position in this case, and in all three cases that

24    you're going to have before you for sentencing here

25    today, starts out with a claim that the factor that

1    separates in this case, Mr. Bennafield, and you'll

2    hear it again this afternoon, and this afternoon the

3    fact that it separates these men, and that separates

4    them from an ordinary defendant, that their criminal

5    history category is such as it is, and that the most

6    that they served previously in prison was one year.

7         That's the case with Mr. Bennafield and that's

8    the case with the two other sentencings you have here

9    today.  And the reason why I don't typically bring in

10   what happens in other cases, but I think it's

11   significant here because the claim for what is

12   leniency, and compared to a sentencing guideline that

13   is reasonable and a minimum sentence of 120 months,

14   there is leniency to come down from the guideline

15   sentence and sentence Mr. Bennafield to 10 years.

16        And the reason for the leniency is he's so

17   different from any other drug dealer that comes into

18   this courtroom.  But is he really so different is

19   what I'd like the Court to reflect on.  Isn't he the

20   same as any other defendant that we have had graduate

21   into Federal Court?  That he has a history.  He's

22   been a drug dealer.  He moved from smaller quantities

23   to larger quantities.  He moved from a bigger city

24   into a smaller city here in Erie where he could, in

25   his mind, more easily get away with his drug trade.

1          And it's those type of guys who have graduated

2     through the system, who need to be treated in such a

3     fashion in the federal system.  So, not at the

4     mandatory minimum, but at a level that takes into

5     consideration everything.

6          Counsel is correct, and I actually overlooked

7     the safety valve provisions.  But what's interesting

8     about that argument is that with regard to this

9     defendant you can only qualify for the safety valve

10    consideration is if you have no more than one

11    criminal history.  This defendant would never have

12    been eligible or a defendant like him.  He would

13    never be eligible for a safety valve.

14          If you take his two 18 year old marijuana

15    small possessions, there's two points right there.

16    So this defendant and other defendants like him with

17    similar backgrounds, even if it's not comparable to

18    someone with a clean slate but with similar

19    backgrounds, even the most minor offenses in their

20    criminal history would keep them from being afforded

21    the safety valve provisions.

22          So you look at the mandatory minimum.  And if

23    you impose a mandatory minimum, my point to the Court

24    is, have you really considered everything else about

25    this man's background that 3553 requires you to do?

1    Because taking out the people eligible for a safety

2    valve mandatory minimum, it's a minimum, your Honor.

3    And now look at everything else we know about the

4    defendant, the minimum would apply even if he had

5    just those two marijuana convictions.

6         What else should we look at in determining

7    where to sentence him?  We could start with his three

8    previous felony drug traffic convictions.  We can

9    just start with those.  And just because he was lucky

10   enough to be in the State of Ohio, your Honor, if he

11   committed those drug traffic offenses in

12   Pennsylvania, each one of them would have qualified

13   for career offender status and he'd be looking at 260

14   to 327 months under the sentencing guidelines.  I

15   know you're not bound by the Sentencing Guidelines,

16   but I know this Court will consider the rationale,

17   the reasoning behind the Sentencing Commission

18   providing increased sentences based upon all these

19   factors.  And it just makes good sense, your Honor.

20        I don't dispute counsel's claim ten years is a

21   lot of time in prison, but there's a difference

22   between Shaun Bennafield the drug dealer in Cleveland

23   who moved over to Erie to continue the same drug

24   activity and another defendant who is not safety

25   valve eligible, and who happens to be here on a crack

1    cocaine charge.  He turned himself into a crack

2    cocaine dealer.  Things didn't work out so well in

3    Cleveland so you move to the little town of Erie.

4    And you think you're going to get away with it.  And

5    luckily the Eagle task folks zeroed in on these guys.

6    And when the word gets out to other dealers who move

7    to Erie, we have to let them know they're going to

8    get a more severe sentence than the mandatory

9    minimum.

10    Whether it's two years more than the mandatory

11    minimum, or five years more than the mandatory

12    minimum, in Erie, Pennsylvania when you move your

13    drug trade from Cleveland to Erie, you're going to

14    get sentenced more harshly.  And I believe if you

15    consider all those factors, under 3553, unfortunately

16    for Mr. Bennafield, this offense is serious.  His

17    quantity of cocaine significantly increased from

18    those offenses for which he only received nine months

19    or a year in prison.  And if you just do the math and

20    say, okay, for this quantity of drugs you got a year.

21    Well, guess what?  Today in Federal Court for this

22    quantity of drugs.  You're going to get 140 to 175

23    months just based on the seriousness of the offense.

24    Drug dealers on the street, Judge, they come

25    in, and when they're ready to take their hit, they

1    say I can do ten, because they know it's a mandatory

2    minimum.  I can do ten.  And I'm wondering here today

3    how many times in all of his prior drug trafficking

4    convictions he stood up in front of a Judge and

5    unfortunately gave the same speech he gave today.

6    I'm sorry for the offense I've committed.  I realize

7    the wrong.  You know, how many times are we going to

8    hear that?  Because, you know if they get hit and

9    they get hit hard, and they don't come back to deal

10    more drugs.

11         And Attorney Patton makes very good statements

12    with the way the system treats these young men.  But

13    that doesn't cause you to now, once again, provide

14    the same low or lenient sentence that would otherwise

15    be afforded.  And I request you sentence within the

16    guideline range, because I think it's wise.  And not

17    only is it a guideline sentence, but it properly

18    takes into consideration the factors of 3553.  Thank

19    you.

20         THE COURT:  Thank you, Mr. Piccinini.  Well,

21    so often in sentencing defendants we concentrate so

22    much on the life experience of the defendant himself,

23    which is proper.  But we also have to consider the

24    impact of the defendants' actions on the community.

25    And nobody will argue with the fact that the drug

1    dealings in this day and age is a terrible, terrible

2    problem for society and law enforcement.  And we know

3    about mothers being addicted to drugs, who then have

4    a child when the child is born, who is addicted to

5    whatever the mother was taking.  This is terrible,

6    terrible stuff.  And this defendant had a lot of

7    cocaine with him.

8        We've also studied 18 United States Code,

9    Section 3553.  Mr. Patton mentioned it and Mr.

10   Piccinini described it in his position, stating that

11   we must look at the nature and circumstances of the

12   offense, which is serious, and the history and

13   characteristics of the defendant.  And we have 15

14   arrests, 11 convictions.  Ten of them for drugs.  The

15   sentence should reflect the seriousness of the

16   offense to promote respect for the law and provide

17   just punishment for the offense, and offer adequate

18   deterrence to the criminal conduct, and protect the

19   public from further crimes of the defendant.  And

20   admittedly, the guideline range here is very tough.

21       I'm going to stay within the guideline range.

22   I'm not going to the top of the range as suggested by

23   the Government, but I'm going to come in within the

24   guideline range in my sentence.

25       Mr. Piccinini, is there any reason that

1       sentence should not be imposed at this time?

2               MR. PICCININI:  No, your Honor.

3               THE COURT:  Mr. Patton?

4               MR. PATTON:  No, sir.

5               THE COURT:  Mr. Bennafield?

6               THE DEFENDANT:  No, sir.

7               THE COURT:  After consulting with the

8       guidelines, it's the judgment of the Court that the

9       defendant, Shaun Lanail Bennafield, is hereby

10      committed to the custody of the Bureau of Prisons to

11      be imprisoned for a term of 144 months.

12              Upon release from imprisonment, the defendant

13      shall be placed on supervised release for a term of

14      five years.  Within 72 hours of release from the

15      custody of the Bureau of Prisons, the defendant shall

16      report in person to the Probation Office in the

17      district to which the defendant is released.

18              While on supervised release, the defendant

19      shall not commit another federal, state, or local

20      crime; shall comply with the standard conditions of

21      supervision that have been recommended by the

22      sentencing commission, and adopted by this Court; and

23      shall also comply with the following additional

24      conditions:

25              The defendant shall not illegally possess a

1    controlled substance.

2         The defendant shall not possess a firearm or

3    destructive device.

4         The defendant shall participate in a program

5    of testing, and if necessary, treatment for substance

6    abuse as directed by the probation officer, until

7    such time as the defendant is released from the

8    program by the probation officer.  Further, the

9    defendant shall be required to contribute to the

10   costs of services for any such treatment in an amount

11   determined by the probation officer, but not to

12   exceed the actual cost.  The defendant shall submit

13   to at least one drug urinalysis within 15 days of

14   being placed on supervision, and at least two

15   periodic tests thereafter.

16        The defendant shall cooperate in the

17   collection of DNA as directed by the probation

18   officer.

19        The Court finds that the defendant does not

20   have the ability to pay a fine.  The Court will waive

21   the fine in this case due to the defendant's

22   inability to pay.

23        It is further ordered that the defendant shall

24   pay to the United States a special assessment of

25   $100, which shall be paid to the U.S. District Court

1    Clerk forthwith.

2    We believe that a sentence of 145 months

3    followed by five years of supervised release

4    adequately addresses the nature and circumstances of

5    this offense, as well as the history and background

6    of the defendant.

7    In imposing this sentence, we have considered

8    the kinds of sentences available, and the sentencing

9    range set forth in the guidelines, including any

10   relevant policy statements issued by the Sentencing

11   Commission.

12   This sentence takes into account the need to

13   avoid unwarranted disparities in sentencing among

14   defendants with similar records who have been found

15   guilty of similar conduct.

16   At the same time, this sentence reflects the

17   seriousness of this offense and provides just

18   punishment for it; and also promotes respect for the

19   law and affords adequate deterrence to criminal

20   conduct while protecting the public from further

21   crimes by this defendant.

22   Mr. Bennafield, you have a right to appeal; an

23   appeal must be filed within ten days; you are

24   entitled to a lawyer at every stage of the

25   proceedings, and if you cannot afford an attorney,

1    one will be provided to you without charge.

2         I don't believe there are any counts to be

3    dismissed here.

4         MR. PICCININI:  There are none.

5         MR. PATTON:  Your Honor, if I could, two

6    issues.  First, we would object to the condition of

7    supervised release that requires Mr. Bennafield to

8    assist in providing a sample of his DNA.  And --

9         THE COURT:  It's denied.

10        MR. PATTON:  The other issue I would ask is if

11   you would recommend to the Bureau of Prisons that Mr.

12   Bennafield be housed close to Cleveland so he can be

13   able to be near his family.

14        THE COURT:  I would be willing to do that.

15        MR. PATTON:  Thank you.

16        (At which time, 10:30 a.m. The proceedings
            were concluded.)

17

18

19

20

21

22

23

24

25

1                        C E R T I F I C A T I O N

2

3            I,   Denice A. Grill, RMR, a Court Reporter and

4    Notary Public in and for the Commonwealth of Pennsylvania,

5    do hereby certify that the foregoing is a true and accurate

6    transcript of my stenographic notes in the above-captioned

7    matter.

8

9

10                           _____

11                           Denice A. Grill, RMR

12                           Registered Merit Reporter

13

14

15            DATED:   _____

16

17

18

19

20

21

22

23

24

25