IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA    )
                            )
        v.                  )    Criminal No. 05-12 Erie
                            )    Civil Action No. 07-24 Erie
SHAUN LANAIL BENNAFIELD     )

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION
TO VACATE JUDGMENT PURSUANT TO 18 U.S.C. § 2255**

AND NOW comes the United States of America, by and through its counsel, Mary Beth Buchanan, United States Attorney for the Western District of Pennsylvania, and Marshall J. Piccinini, Assistant United States Attorney for said district, and states as follows:

I.  **FACTS**

In early March 2005, detectives and vice officers from the Erie Police Department (EPD) developed two cooperating informants (CIs) in an investigation into the drug dealing activities of an individual known to the CIs as "Kenny", who was later identified as the defendant.  One of the CIs agreed to conduct a controlled purchase of crack cocaine from the defendant. Under the surveillance of an EPD detective, the CI met with the defendant in a laundromat, where an exchange between the CI and the defendant occurred.  According to the controlled buy plan, the CI returned to his/her apartment under the guise of needing to get money to pay for the crack cocaine.  There, s/he turned over two ounces of crack cocaine to an EPD vice officer.

The EPD officers then went to the laundromat to arrest the defendant. Upon seeing the officers enter the laundromat, the defendant turned and ran about twenty feet before tripping and falling to the floor. While holding him in this position to handcuff him, the officers observed a baggie of crack cocaine on the floor by the defendant's head and chest. The defendant stated, "I give up. I'm not gonna fight you. I got a bag of dope right here." The defendant identified himself as Shaun Bennafield, and further stated, "I knew that motherfucker was trying to set me up." Bennafield was arrested and transported to EPD.

## II.  **PROCEDURAL HISTORY**

The EPD officers initiated drug charges against Bennafield in the local court system by filing a criminal complaint with a Magisterial District Justice on March 2, 2005, the day of Bennafield's arrest. On March 23, 2005, Bennafield waived his arraignment before the district justice and the charges were bound over to the Erie County Court of Common Pleas. However, the decision was made among law enforcement authorities to prosecute Bennafield's case in the federal system rather than the state system. Accordingly, on April 12, 2005, Bennafield was indicted by a federal grand jury and charged in a one-count indictment with possession with intent to distribute and distribution of fifty grams or more of crack cocaine. At the request of the U.S. Attorney's Office, an arrest warrant was issued for Bennafield's

arrest on the federal charges.[1]

Bennafield was not arrested pursuant to the federal arrest warrant until October 12, 2005.  However, during the time that Bennafield was a fugitive, the local charges were not dismissed.[2] The Erie County District Attorney's Office filed an information in the Erie County Court of Common Pleas charging Bennafield with five counts of various drug violations relative to the same conduct forming the basis of the indictment.  In addition, apparently in May 2005, Bennafield's counsel, David Ridge, entered into plea negotiations with the D.A.'s Office.  However, when Bennafield was arrested pursuant to the federal arrest warrant, the next day the D.A.'s Office sought an order dismissing the charges pending against him in the Court of Common Pleas.  The D.A.'s request was granted on October 17, 2005.

Initially, Attorney Ridge continued his representation of Bennafield in the federal system until October 17, 2005, when Attorney J. Timothy George entered his appearance.  On October 18, 2005, however, Attorney George's representation was terminated and

---

[1] Bennafield had posted a bond of $30,000, and had been released from the local authorities' custody on March 4, 2005. Therefore, he was not in custody at the time of his indictment by the federal grand jury.  On October 3, 2005, Bennafield was declared a fugitive with respect to his federal charges.

[2] It is standard practice when charges are initiated locally, but subsequently taken to federal court, for the District Attorney's Office to not dismiss the local charges until the defendant is arrested on the federal warrant.

Attorney Ridge re-entered his appearance. One week later, Bennafield requested and was appointed counsel, Assistant Federal Public Defender Thomas Patton, who represented Bennafield throughout the plea and sentencing.

On November 10, 2005, Bennafield pled guilty to the one-count indictment without a plea agreement. He was sentenced on March 13, 2006 to 144 months of incarceration.

On March 27, 2006, Assistant Public Defender Karen Gerlach filed a Notice of Appeal on behalf of Bennafield. On November 11, 2006, the Third Circuit Court of Appeals affirmed the district court's judgment/order. Bennafield's *pro se* Motion to Vacate under 28 U.S.C. § 2255 followed and is presently pending before the Court.

## III. **STANDARD OF REVIEW**

Pursuant to 28 U.S.C. § 2255, a prisoner in federal custody may move the court which imposed sentence to vacate, set aside, or correct the sentence if it was imposed in violation of federal constitutional or statutory law, was imposed without proper jurisdiction, is in excess of the maximum authorized by law, or is otherwise subject to collateral attack. 28 U.S.C. § 2255. Relief under this provision is "generally available only in 'exceptional circumstances' to protect against a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair

4

procedure." United States v. Gordon, 979 F.Supp. 337, 339 (E.D. Pa. 1997) (citing Hill v. United States, 368 U.S. 424, 428 (1962)). The court may dispose with the necessity of a hearing if the motion and the files and records "conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. See also, United States v. Nahodil, 36 F.3d 323, 326 (3d Cir. 1994)(quoting United States v. Day, 969 F.2d 39, 41-42 (3d Cir. 1992)).

IV.  **ARGUMENT**

   A.  **Ineffective Assistance of Counsel**

      1.  **The Strickland Standard**

      A defendant claiming ineffective assistance of counsel must satisfy the two-pronged test announced by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). To do so, the defendant must show "(1) his or her attorney's performance was, under all the circumstances, unreasonable under prevailing professional norms, and (2) there is a 'reasonable probability that, but for counsel's unprofessional errors, the result would have been different.'" United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992)(quoting Strickland, 466 U.S. at 687-96). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

      Review of an ineffective assistance claim begins with a "strong presumption" that counsel's performance was reasonable. Strickland, 466 U.S. at 689. "The defendant must overcome the

presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" <u>Id.</u> at 689; <u>United States v. Kauffman</u>, 109 F.3d 186, 189-90 (3d Cir. 1997).  Indeed, "[i]t is [] only the rare claim of ineffective assistance of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." <u>United States v. Gray</u>, 878 F.2d 702, 711 (3d Cir. 1989).

The "deficiency" prong asks whether counsel's conduct "fell below an objective standard of reasonableness" viewed as of the time it occurred.  <u>Strickland</u>, 466 U.S. at 688, 690; <u>Gray</u>, 878 F.2d at 711.  The "prejudice" prerequisite asks whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694; <u>United States v. Headley</u>, 923 F.2d 1079, 1083 (3d Cir. 1991).  In order to meet his burden, Bennafield must satisfy both of the <u>Strickland</u> prongs.

> **2.    Defense Counsel Was Not Ineffective for Failing to Argue That There Was No Probable Cause to Arrest the Defendant Without a Warrant**

As noted earlier, the arrest of Bennafield was conducted by members of EPD pursuant to state law.  Nevertheless, in federal court, notwithstanding the validity of an arrest under state or local law, probable cause to arrest exists when the totality of the circumstances within an officer's knowledge is sufficient to warrant a person of reasonable caution to conclude that the person

being arrested has committed or is committing an offense. United States v. Laville, __ F.3d __, 2007 WL 777866 (3d Cir. March 16, 2007). As such, at most, the validity of an arrest under state law is a factor that the court may consider in assessing probable cause. Laville, 2007 Wl 77866 at *3.

Pursuant to Pennsylvania law, with respect to felony offenses, in order to conduct a warrantless arrest in a public place, law enforcement authorities must have probable cause to believe that a felony has been committed and that the person to be arrested is the felon. See e.g., Commonwealth v. Clark, 558 Pa. 157, 163, 735 A.2d 1248, 1251 (Pa. 1999). With respect to misdemeanor offenses, law enforcement officers can make a warrantless arrest when (1) the misdemeanor is committed in the presence of the officer; or (2) in circumstances proscribed by the Pennsylvania legislature when misdemeanors are committed outside the officers' presence.[3] Clark, 558 Pa. at 163, 735 A.2d at 1251.

In the present case, the EPD officers not only had probable cause to believe that Bennafield had committed a felony, but Bennafield also was in their presence when he committed a

---

[3] The court in Clark gave as examples of such legislative granting of authority as follows: (1) 18 Pa.C.S.A. § 3904, granting the same authority as felony warrantless arrests for warrantless arrests for any grade of theft; (2) 75 Pa.C.S.A. § 3731(c), authorizing warrantless arrests where there is probable cause to believe that an individual is driving under the influence of alcohol; and (3) 18 Pa.C.S.A. § 2711(a), authorizing warrantless arrests in certain instances of domestic violence.

misdemeanor.    In   either   event,   the   arrest   was   legal   under Pennsylvania   law,   a   factor   to   be   considered   when   making   the probable  cause  determination  under  federal  law.

Pursuant  to  Pennsylvania  law,  like  federal  law,  the determination of probable cause to arrest is based on the totality of  the  circumstances.    Clark,  558  Pa.  at  164,  735  A.2d  at  1252 (citations  omitted).    "Probable  cause  exists  where  the  facts  and circumstances   within   the   officer's   knowledge   are   sufficient   to warrant  a  person  of  reasonable  caution  in  the  belief  that  an offense  has  been  or  is  being  committed."   Id. (citations  omitted). Probable  cause  is  "viewed  from  the  vantage  point  of  a  prudent, reasonable,  cautious  police  officer  on  the  scene  at  the  time  of  the arrest  guided  by  his  experience  and  training."   Id.

In  the  present  case,  the  officers  had  information  from two  CIs  that  Bennafield  was  dealing  crack  cocaine.    Under  law enforcement  surveillance,  one  CI  made  a  controlled  buy  of  crack cocaine  from  Bennafield.    A  surveillance  officer  actually  observed an  exchange  take  place  between  Bennafield  and  the  CI.    When  the  CI returned  to  his/her  apartment,  s/he  turned  over  two  ounces  of  crack cocaine  that  s/he  had  obtained  from  Bennafield.    At  this  point,  the officers  had  probable  cause  to  believe  that  two  felony  offenses  – possession  with  intent  to  distribute  a  controlled  substance  and delivery  of  a  controlled  substance  –  had  occurred.[4]

---

[4] See 35 Pa.C.S.A. §780-113(a)(30) and (f)(1).

However, Bennafield gave the officers even more probable cause upon their entering the laundromat. When the officers entered the laundromat, Bennafield ran. His actions added to the officers' belief that he had committed two felony offenses.

Moreover, Bennafield committed a misdemeanor offense within the presence of the officers. When Bennafield ran, he only made it twenty feet before he tripped and fell inside the laundromat. When the officers reached him, he was still on the floor and there was a bag of marijuana near his head and chest area. Bennafield even stated to the officers, "I give up. I'm not gonna fight you. I got a bag of dope right here." Thus, Bennafield committed the misdemeanor offense of possession of marijuana in the presence of the officers.[5]

Thus, the EPD officers had probable cause to believe that Bennafield had committed a felony, and had witnessed Bennafield commit a misdemeanor offense. In either event, under Pennsylvania law, the officers could arrest Bennafield without a warrant. The legality of the arrest under Pennsylvania law is one factor that may be considered in the totality of the circumstances test for probable cause for a warrantless arrest in the federal courts.

In the federal courts, probable cause to arrest without a warrant exists when the totality of the circumstances within an officer's knowledge is sufficient to warrant a person of reasonable

---

[5] See 35 Pa.C.S.A. § 780-113(a)(16) and (b).

caution to conclude that the person being arrested has committed or is committing an offense. As discussed above, the officers had probable cause to believe that Bennafield had committed an offense. Based on the facts previously discussed, there was overwhelming information within the officers' knowledge to warrant their belief that Bennafield had committed controlled substance offenses as well as was committing a controlled substance offense when they attempted to approach him. Based on the totality of these circumstances, probable cause existed for the officers to conduct a warrantless arrest.

Accordingly, there simply was no basis for Attorney Patton to challenge the arrest of Bennafield. Under both state and federal law, the warrantless arrest was valid. Therefore, Attorney Patton cannot be found ineffective for failing to raise a meritless issue.

Furthermore, all of these facts are of record, and Bennafield admitted to these facts at the time of his plea.[6] (Plea Tr. p. 13-15). Therefore, there is no need to have an evidentiary hearing regarding this issue since the record conclusively shows

---

[6] Bennafield disagreed with only one aspect of the government's proffer at the time of sentencing. Specifically, he denied making statements to the officers regarding the bag of marijuana found next to him when he was arrested. (Plea Tr. p. 15-16). Nevertheless, the government submits that the mere observance of the bag of marijuana near Bennafield's head and chest where he fell, was enough to establish that Bennafield had committed a misdemeanor in the presence of the officers and certainly supported probable cause to believe he had committed an offense.

that Bennafield is not entitled to relief.  28 U.S.C. § 2255;
Nahodil, 36 F.3d at 326.

### 3. Defense Counsel Was Not Ineffective for Failing to Object to the Criminal History Points Calculation

Bennafield claims that Attorney Patton was ineffective
for failing to object to the calculation of his criminal history
points in the PreSentence Report (PSR).  Specifically, Bennafield
claims that the criminal history points at paragraphs 29, 33, 35,
and 39 were assessed in error.  With respect to paragraphs 29 and
39, Bennafield argues that he should not have been assessed two
criminal history points for his prior convictions because his
sentences were "suspended".  With respect to paragraphs 33 and 35,
Bennafield argues that only a total of two points, instead of four
points, should have been assessed because these two sentences ran
concurrently.

### a. Paragraphs 29 and 39 - U.S.S.G. § 4A1.1(b)

Bennafield was assessed two criminal history points at
each of paragraphs 29 and 39 of the PSR, pursuant to section
4A1.1(b) of the Guidelines.  Section 4A1.1(b) provides that two
criminal history points are assessed for each sentence of
imprisonment of at least sixty days.  U.S.S.G. § 4A1.1.

Paragraph 29 concerns Bennafield's conviction for
possession of drugs in the Cuyahoga County Court of Common Pleas of
Ohio.  Initially, Bennafield was sentenced to two years of
probation, but was resentenced to six months of incarceration (with

11

19 days credit) for violating his probation.  It appears, however, that he was released after serving only seven additional days of imprisonment.  Since the sentence of imprisonment, six months, was more than sixty days, two criminal history points were assessed pursuant to U.S.S.G. § 4A1.1(b).

For purposes of section 4A1.1(b), "sentence of imprisonment" means a sentence of incarceration and refers to the maximum sentence imposed.  U.S.S.G. § 4A1.2(b)(1).  In Bennafield's case, the maximum sentence imposed was 6 months of incarceration, which is more than sixty days, and therefore section 4A1.1(b) was properly applied to assess two criminal history points.

Bennafield, however, asserts that pursuant to section 4A1.2(b)(2), only the time he actually served should be counted to determine the length of the sentence of imprisonment.  Bennafield has misconstrued section 4A1.2(b)(2) and the meaning of suspended sentence.  The Commentary to section 4A1.2 clarifies that for purposes of applying section 4A1.1(b), "the length of a sentence of imprisonment is the stated maximum.  That is, criminal history points are based on the sentence pronounced, not the length of time actually served." U.S.S.G. § 4A1.2, *Commentary, Application Note 2* (citing U.S.S.G. §§ 4A1.2(b)(1) and (2)).

Therefore, regardless of the time Bennafield actually served, it is his maximum sentence, 6 months, that is used to assess criminal history points.  Since Bennafield was sentenced to

12

more than 60 days, 2 points were correctly added to his criminal history score. Accordingly, Bennafield's argument is without merit, and there was no basis for Attorney Patton to object to the assessment of two criminal history points at paragraph 29 of the PSR. Likewise, Bennafield's argument must fail with respect to paragraph 39.

Paragraph 39 concerns Bennafield's conviction for possession of a controlled substance in the Erie County Court of Common Pleas of Pennsylvania. On November 6, 2002, Bennafield was sentenced to 3 to 6 months of imprisonment effective April 27, 2002. This means that Bennafield was given credit for the 194 days he had already served in prison while the charge was pending. His sentence was not "suspended". Furthermore, pursuant to section 4A1.2(b)(1) and the Commentary cited above, it is the maximum sentence pronounced that is the critical fact for computing the sentence of imprisonment for purposes of section 4A1.1(b). Again, Bennafield was sentenced to a maximum sentence of 6 months, which is more than 60 days, and therefore, two criminal history points were properly assessed at paragraph 39 pursuant to section 4A1.1(b).

Since there is no merit to Bennafield's argument, Attorney Patton was not ineffective for failing to challenge the calculation of criminal history points at paragraphs 29 and 39 of the PSR.

13

    **b.**    **Paragraphs 33 and 35 - Concurrent Sentences**

Bennafield claims that since the sentences for his prior convictions summarized in paragraphs 33 and 35 were concurrent sentences, he should have only been assessed a total of two, instead of four, criminal history points for both convictions. Bennafield's argument is based on a selective reading of section 4A1.2(a)(2) of the Guidelines.

While Bennafield has focused on the latter part of section 4A1.2(a)(2) which reads "Use the longest sentence of imprisonment if concurrent sentences were imposed. . .", he has disregarded the former part which explains that this only applies to prior sentences imposed in related cases. U.S.S.G. §4A1.2(a)(2). Section 4A1.2 also provides that prior sentences imposed in unrelated cases are to be counted separately.

The term "related cases" is defined in the Commentary to section 4A1.2 as follows:

> Prior sentences are not considered related if they were for offenses that were separated by an intervening arrest (_i.e._, the defendant is arrested for the first offense prior to committing the second offense). Otherwise, prior sentences are considered related if they resulted from offenses that (A) occurred on the same occasion, (B) were part of a single common scheme or plan, or (C) were consolidated for trial or sentencing.

U.S.S.G. § 4A1.2, _Commentary, App. Note 3_.

In Bennafield's case, it is clear that his two prior convictions are unrelated. The offense summarized in paragraph 33

14

occurred on January 9, 1998, when Bennafield was found in possession of crack cocaine. In that case, on June 29, 1998, he pled guilty *before* he had even committed the offense summarized in paragraph 35, which occurred on March 3, 1999, more than 1 year later. Therefore, not only was he arrested for the first offense before committing the second offense, he pled guilty to the first offense before committing the second offense. Moreover, there was another intervening arrest of Bennafield on May 21, 1998, for Reckless Operation and Speeding.

Therefore, the cases summarized in paragraphs 33 and 35 are not related, even though Bennafield received a concurrent sentence. Since the cases are not related, the sentences must be counted separately, as was done in Bennafield's case. Accordingly, Attorney Patton cannot be found ineffective for failing to challenge the calculation of criminal history points.

### 4. Defense Counsel Was Not Ineffective for Failing to Challenge the Plea as Being in Violation of Rule 11

The precise basis of Bennafield's argument that counsel was ineffective for failing to challenge the plea as being in violation of Rule 11 is not clear to the government. It appears that Bennafield believes he should have had a plea agreement and that he should have been sentenced in accordance with the plea agreement allegedly reached in state court. (Def. Motn., p. 4). The government is unsure how either one of these arguments implicates Rule 11.

Nevertheless, with respect to the lack of a plea agreement, Bennafield was only charged with one count, and therefore, there were no other charges that could be dismissed as part of a plea agreement. Furthermore, Bennafield has stated that he does not want to withdraw his plea; rather, he wants to be sentenced according to his state plea agreement. Thus, it appears that the crux of Bennafield's complaint is in relation to the federal penalties being more severe than the state penalties.

Although Bennafield's case was initiated by local law enforcement authorities, his case was subsequently brought in the federal system, and the local charges were ultimately withdrawn. Any plea negotiations that took place in the state system have no application and are not binding in the federal system. There simply is no legal basis to Bennafield's argument and Attorney Patton had no ability to try to enforce any prior state system plea negotiations.

Nevertheless, Attorney Patton did bring this issue to the Court's attention prior to sentencing. Attorney Patton filed a Position With Respect to Sentencing Factors on behalf of Bennafield, wherein he asked this Court in imposing sentence to consider the sentence Bennafield would have received had his case remained in the state system. (Def. Position, p. 4-5). Although Attorney Patton recognized that the sentence Bennafield faced in state court was not binding on this Court, he argued on behalf of

16

Bennafield that it was an appropriate factor for this Court to consider under Title 18, United States Code, Section 3553(a)(2). Thus, Attorney Patton did all that he could with respect to the alleged plea agreement reached in the local courts. Accordingly, Attorney Patton should not be found ineffective for failing to pursue enforcement of the state system plea negotiations.

> **5.    Defense Counsel Was Not Ineffective for Failing to Challenge the Crack to Powder Cocaine Ratio at Sentencing**

Lastly, Bennafield claims that Attorney Patton was ineffective for failing to raise at sentencing the issue of the crack/powder cocaine discrepancy in the Sentencing Guidelines. As this Court is aware, the Sentencing Guidelines provide for a 100:1 ratio between crack and powder cocaine; that is, 1 gram of crack is treated the same as 100 grams of powder for sentencing purposes.

In support of his argument, Bennafield cites to two cases, wherein the courts have found that the sentencing court has the discretion not to apply the recommended Guidelines ratio. (Def. Motn. to Amend, p. 1) (citing United States v. Pickett, 475 F.3d 1347 (D.C. Cir. 2007); United States v. Gunter, 462 F.3d 237 (3d Cir. 2006)). For the reasons discussed below, Bennafield's argument has no merit, and therefore, Attorney Patton cannot be found ineffective for failing to raise the issue.

In order to establish ineffective assistance of counsel, Bennafield must prove both prongs of the Strickland test: (1) the

"deficiency" prong, and (2) the "prejudice" prong. The "deficiency" prong asks whether counsel's conduct "fell below an objective standard of reasonableness" *viewed as of the time it occurred*. <u>Strickland</u>, 466 U.S. at 688, 690; <u>Gray</u>, 878 F.2d at 711.

However, both of the cases cited by Bennafield, including <u>Gunter</u>, the first Third Circuit case to recognize post-<u>Booker</u> that a sentencing court errs when it believes it has no discretion to consider the crack/powder cocaine differential, were decided well after Bennafield's March 15, 2006 sentencing.[7] Indeed, as of the time of Bennafield's sentencing, the crack/powder cocaine ratio case law was quite the opposite of the case law cited by Bennafield.

As illustrated by the Third Circuit in <u>Gunter</u>, the case law as it existed at the time of Bennafield's sentencing routinely upheld the application of the Guideline's 100:1 differential against constitutional attack. <u>Gunter</u>, 462 F.3d at 244 (citing <u>United States v. Frazier</u>, 981 F.2d 92, 95-96 (3d Cir. 1992) (*per curiam*) (holding that distinctions between crack and cocaine powder for sentencing purposes are not an equal protection violation and that the 100:1 ratio is not cruel and unusual punishment); <u>United States v. Jones</u>, 979 F.2d 317, 320 (3d Cir. 1992) (holding Guidelines provisions imposing higher offense levels for offenses

---

[7] <u>Gunter</u> was decided on September 11, 2006, and <u>Pickett</u>, was decided on February 13, 2007.

involving crack cocaine not to be unconstitutionally vague),
*superseded by statute as state in* United States v. Roberson, 194
F.3d 408, 417 (3d Cir. 1999)).

Thus, as of the time of Bennafield's sentencing, the case
law available to Attorney Patton squarely rejected Bennafield's
current argument.  Since the cases relied upon by Bennafield were
not decided until after his sentencing, Attorney Patton should not
be found ineffective for failing to raise an argument that the then
current case law routinely rejected.  See, United States v. Henry,
913 F.Supp. 334, 337 (M.D. PA 1996) (counsel could not have
foreseen at time of sentencing subsequent case law distinguishing
between D- and L-methamphetamine as pertaining to the Sentencing
Guidelines, and therefore, could not be found ineffective).

Furthermore, even if Bennafield were able to establish
that Attorney Patton's performance was somehow deficient in failing
to raise an issue that had yet to be decided by the appellate
courts, he cannot prove the second Strickland prong: that "there is
a reasonable probability that, but for counsel's unprofessional
errors, the result of the proceeding would have been different."
Strickland, 466 U.S. at 690, 694; United States v. Headley, 923
F.2d 1079, 1083 (3d Cir. 1991).

First, Bennafield assumes that this Court did not
consider the crack/powder discrepancy when imposing sentence.
While this Court did not state that it specifically had considered

the ratio, neither did it state that it was unable to consider the discrepancy. The Court did state that it recognized that the Sentencing Guidelines were advisory pursuant to <u>Booker</u>, and that it had considered all of the § 3553 factors.

Second, Bennafield must establish that there is a reasonable probability that this Court would not have followed the recommended sentencing guideline in his case. With respect to this second point, it is important to note that <u>Gunter</u> does not mandate that the court must impose a sentence below the applicable Guidelines range solely on the basis of the crack/powder cocaine differential. <u>Gunter</u>, 462 F.3d at 249. Rather, the limited holding of <u>Gunter</u> is that the "district courts may consider the crack/powder cocaine differential as a factor, but not a mandate, in the post-<u>Booker</u> sentencing process." <u>Id.</u> Thus, even if Attorney Patton had raised the argument, and even if this Court had accepted the argument contrary to the Third Circuit case law at the time, Bennafield has still not established that there is a reasonable probability that this Court would have chosen to sentence him differently.

Third, regardless of whether or not the substance was crack or powder, Bennafield was facing a mandatory 120 months of incarceration. Bennafield was sentenced to 144 months of incarceration. Given the mandatory minimum and Bennafield's extensive criminal history of drug dealing, the government submits

that Bennafield cannot establish that there is a reasonable probability that his sentence would have been less than 144 months if counsel had raised the issue. Having failed to satisfy both the deficient performance and prejudice prongs, Bennafield's claim of ineffective assistance of counsel must fail.

### 6. **There Is No Need to Have an Evidentiary Hearing**

Section 2255 provides that the court may dispose with the necessity of a hearing if the motion and the files and records "conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. <u>See also</u>, <u>United States v. Nahodil</u>, 36 F.3d 323, 326 (3d Cir. 1994)(quoting <u>United States v. Day</u>, 969 F.2d 39, 41-42 (3d Cir. 1992)). As previously discussed, the facts relevant to deciding Bennafield's first argument, regarding probable cause to make a warrantless arrest, are all of record, Bennafield having admitted to those facts at the time of his plea. Therefore, the government submits that the record in this case conclusively demonstrates that Bennafield is not entitled to relief.

Likewise, with respect to Bennafield's remaining issues, concerning sentencing guidelines calculations, his plea, and the crack/powder cocaine discrepancy, there is no need to have an evidentiary hearing. The motion, files, and record also conclusively show that Bennafield is not entitled to relief on his claimed errors. Accordingly, the government submits that this Court should rule on Bennafield's motion based on the record and

without conducting an evidentiary hearing.

V.     **CONCLUSION**

        WHEREFORE, the government requests that this Court deny the defendant's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence without an evidentiary hearing.


        Respectfully submitted,

        MARY BETH BUCHANAN
        United States Attorney


        /s/ Marshall J. Piccinini
        MARSHALL J. PICCININI
        Assistant U.S. Attorney
        PA ID No. 56362